Oliver FRENCH, Jr., Petitioner,

v.

Kurt JONES, Respondent.

Civil No. 98–CV–74520–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 29, 2000.

David A. Moran, Special Asst. Appellate Defender, Detroit MI, for Petitioner.

Olga Agnello–Raspa, Detroit, MI, for Respondent.

*OPINION AND ORDER GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS FOLLOWING REMAND FROM THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT.* [1]

TARNOW, District Judge.

This matter is before the Court following a remand from the United States Court of Appeals for the Sixth Circuit. On March 25, 1999, the Court granted petitioner a writ of habeas corpus, on the basis that the state trial court gave the jury a supplemental instruction while petitioner's counsel was absent. *French v. Jones,* 41 F.Supp.2d 726 (E.D.Mich.1999). In so ruling, the Court noted that the petitioner had established that he was deprived of the right to the assistance of counsel during a critical stage of the trial, namely, the trial court's re-instruction of a jury that had on three separate occasions indicated to the court that it was hopelessly deadlocked. The Court concluded that because petitioner was deprived of the assistance of counsel during a critical stage of the proceedings, reversal of his conviction was automatic. *Id.* at 733–735.

The respondent appealed the Court's decision to the United States Court of Appeals for the Sixth Circuit. Although the Sixth Circuit agreed with this Court's statement of the law, the Court of Appeals was unable to determine whether petitioner was truly without counsel at the time of the trial court's supplemental jury instruction. The Sixth Circuit remanded the matter back to this Court for an evidentiary hearing for the purpose of determining the precise role that Mr. Ty Jones played in petitioner's defense. *French v. Jones,* 225 F.3d 658, 2000 WL 1033021(6th Cir. July 18, 2000). On August 31, and September 7, 2000, an evidentiary hearing was conducted before this Court. For the reasons stated below, petitioner's application for writ of habeas corpus is again **GRANTED.**

1. Staff Attorney Daniel Besser provided quali- ty research assistance.

## I. *The Evidentiary Hearing*

Pursuant to the Sixth Circuit's remand order, the Court conducted an evidentiary hearing to determine what role, if any, Ty Jones played in petitioner's defense at trial. The Sixth Circuit, as well as respondent, both agreed that neither of petitioner's two attorneys of record, Cornelius Pitts or Monsey Wilson, were present in the courtroom when the trial court reinstructed the jury. Prior to the hearing, both this Court and the Sixth Circuit were of the impression that Mr. Jones was an attorney who had been licensed to practice in California, but had not been admitted to practice law in Michigan, either in general or *pro hac vice* for this case.

Ty Jones was the first witness to testify. Mr. Jones testified that he was a motion picture consultant and screenwriter who had known lead counsel Cornelius Pitts for ten years. According to Mr. Jones, Mr. Pitts was interested in the motion picture business and the two men had discussed Mr. Pitts' cases in the past, possibly for a film project. At the time of petitioner's trial, Mr. Jones was engaged in a project concerning the Detroit criminal justice system entitled "1300 Beaubien".[2] Mr. Jones wanted a 'birdseye view' of a high profile criminal case in Detroit and asked Mr. Pitts if he could sit 'sidesaddle' with Mr. Pitts to get a close view of a criminal case. Mr. Pitts agreed to his request and Mr. Jones sat at counsel table during trial. According to Mr. Jones, however, Mr. Pitts did not have him do anything and he was simply there to observe. Mr. Jones did acknowledge that during the jury *voir dire*, Mr. Pitts had him write down the names of prospective jurors so that Mr. Pitts could address them by name while questioning them. Mr. Jones attended every day of the trial and was present for deliberations.

Contrary to what both this Court and the Sixth Circuit assumed, Mr. Jones is not an attorney. Mr. Jones is not licensed to practice law nor does he possess a law degree. Mr. Jones attended less than one year of law school at New York University Law School, but never graduated. Mr. Jones denied telling Mr. Pitts, petitioner, or any of the other participants that he was an attorney and he never questioned any witnesses or filed any motions in this case. Specifically, Mr. Jones knew nothing of either federal or Michigan law concerning jury instructions. Mr. Jones did not make any objections or comments to the instruction as given by the trial court nor did he even put his name on the record prior to the jury being reinstructed by the judge.

Monsey Wilson was one of the two attorneys of record who represented petitioner in this case. Mr. Wilson testified that Mr. Pitts was the principal attorney in this case and made the decisions concerning Mr. Jones' participation in the case. Mr. Wilson admitted that Mr. Pitts introduced Mr. Jones at the beginning of trial as counsel from California, but indicated that it was his understanding that Mr. Jones was not representing petitioner. It was Mr. Wilson's belief that Mr. Jones was merely there to assist with whatever Mr. Pitts wanted him [Jones] to do. Mr. Wilson didn't know whether Mr. Jones was, in fact, an attorney, but acknowledged that no one ever moved to have Mr. Jones admitted to practice law *pro hac vice* in this case. Mr. Wilson admitted that he was not present when the trial court read the supplemental jury instruction to the jury.

Cornelius Pitts also testified at the hearing. He indicated that he and Mr. Wilson were the only attorneys of record. Mr. Pitts knew Ty Jones, although not for as long as Mr. Jones claimed that the two men had been acquainted. Mr. Pitts thought that Mr. Jones was an attorney but never checked his credentials. Mr. Pitts further claimed that Mr. Jones had told him that he was a practicing attorney. Mr. Pitts emphasized that he did not plan on using Mr. Jones as a lawyer in the case. Mr. Jones never filed an appearance, nor

---

**2.** This is the address of the Detroit Police headquarters.

did Mr. Pitts move to have Mr. Jones admitted to practice *pro hac vice.* Mr. Pitts never told petitioner that Mr. Jones was representing him. According to Mr. Pitts, Mr. Jones was supposed to be a 'gofer' for the defense team.

On cross-examination, Mr. Pitts admitted that he had introduced Mr. Jones at the beginning of trial as counsel, but explained that he did this solely to give the jury the impression that petitioner had a defense team representing him. At sentencing, Mr. Pitts had told the trial judge that Mr. Jones had been admitted to practice law in California, but admitted now that this was an erroneous statement.

Augustus Hutting, the trial prosecutor, was also called to testify. Mr. Hutting testified that Mr. Pitts and Mr. Wilson initially were the only trial counsel for petitioner. On the first day of trial, Mr. Pitts introduced Mr. Jones to Mr. Hutting as an attorney from California who specialized in jury selection. Mr. Hutting advised Mr. Pitts that if he wanted Mr. Jones to sit at counsel table, it would have to be approved by the trial court. Mr. Pitts, Mr. Jones. and Mr. Hutting approached the bench, where Mr. Pitts again told the trial judge that Mr. Jones was an attorney from California. Mr. Jones sat at the defense table for the entire trial.

Mr. Hutting testified that he learned about the third note from the jury on Tuesday morning. At the time, Mr. Wilson and Mr. Jones were present in the courtroom. A deputy informed the men that they had received another note and that the judge was sending the jury to lunch early. The deputy also informed the men to return to court at two o'clock, at which point the judge would address the note. When Mr. Hutting returned at two o'clock, Mr. Jones had returned to court, but neither Mr. Pitts nor Mr. Wilson were present. Shortly thereafter, the judge came out and asked where either Mr. Pitts or Mr. Wilson were. Mr. Hutting informed the court that he did not know where either lawyer was, but indicated that Mr. Wilson had been in court when

they learned about the note and had been told to return to court at two o'clock. Mr. Hutting said that the trial court never responded to Mr. Hutting's statement that Mr. Wilson had been ordered to return to court at two o'clock. Mr. Hutting further acknowledged that he had done between four and five hundred trials in Detroit Recorder's Court and had never been present when a judge instructed a jury without defense counsel being present. Finally, Mr. Hutting noted that the jury was reinstructed at 2:07 p.m., only about seven minutes after the attorneys had been told to report back to court.

## II. *Discussion*

Respondent now concedes that Mr. Jones was not a licensed attorney. Respondent therefore acknowledges that petitioner was not represented by counsel when the trial court gave the jury the supplemental instruction. Respondent contends, however, that reversal of petitioner's conviction is not automatic, because the error complained of here is not a structural error, but a trial error subject to harmless error analysis. Respondent argues that the situation in the present case does not involve the denial of counsel by the trial court, but instead is more analogous to either a jury communication issue or an ineffective assistance of counsel issue. Thus, the respondent argues, a writ of habeas corpus should not issue in the absence of a finding of prejudice against petitioner. Respondent argues that this Court erred in presuming that the absence of counsel during the giving of the supplemental jury instruction was prejudicial, and urges the Court to find the error to be harmless. This Court cannot accept respondent's argument.

 The U.S. Supreme Court has clearly established that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice. *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 1038, 145 L.Ed.2d 985 (2000); *Penson v. Ohio,* 488 U.S. 75, 88, 109 S.Ct. 346, 102 L.Ed.2d 300

(1988); *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The existence of certain structural defects in a trial, such as the deprivation of the right to counsel, requires automatic reversal of the conviction because it infects the entire trial process. *Brecht v. Abrahamson,* 507 U.S. 619, 629–630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The U.S. Supreme Court has routinely found constitutional error without any specific showing of prejudice to a defendant when counsel is either totally absent, or prevented from assisting the accused during a critical stage of the proceedings. *United States v. Cronic,* 466 U.S. at 659, fn. 25, 104 S.Ct. 2039; *United States v. Minsky,* 963 F.2d 870, 874 (6th Cir.1992).

■ The return of a supplemental jury instruction is a critical stage of the criminal proceeding. *Rushen v. Spain,* 464 U.S. 114, 119, fn. 4, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); *Rogers v. United States,* 422 U.S. 35, 38–40, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *Curtis v. Duval,* 124 F.3d 1, 4 (1st Cir.1997). Indeed, the Sixth Circuit agreed with this Court's legal conclusion that the giving of a supplemental jury instruction is a critical stage of the proceedings. *French v. Jones,* 225 F.3d 658; 2000 WL 1033021, * 3 (6th Cir. July 18, 2000). The Sixth Circuit further noted that even the Michigan trial and appellate courts appeared to agree that this was a critical stage of the proceedings. *Id.,* 2000 WL 1033021 * 3, fn. 5.

In *Curtis v. Duval,* the First Circuit agreed with the habeas petitioner that giving a supplemental jury instruction without consulting, and in the absence of, the defendant's attorney, denied the defendant the assistance of counsel at a critical stage of the proceedings. The First Circuit noted that even though this deprivation was short-lived, it occurred "during a vital point in the trial and was, within its terms, total." The First Circuit noted that if it applied the automatic reversal rule enunciated in *Cronic, Penson,* and *Parent* [3], the Court would hold that the error required

reversal. *Curtis,* 124 F.3d at 4–5. The First Circuit in *Curtis* declined under the dictates of *Teague v. Lane* to grant habeas relief to the petitioner solely because his conviction had become final in 1983, one year before *Cronic* was decided. *Id.* at 6.

In support of her argument that automatic reversal is not required in this case, respondent cites to the *Rushen* case. In *Rushen,* the U.S. Supreme Court ruled that an unrecorded *ex parte* communication between a trial judge and a juror can be harmless error. *Rushen* does not support respondent's position for several reasons. *Rushen* did not involve the trial court giving supplemental or additional jury instructions to a jury in counsel's absence. The circumstances in *Rushen* involved a juror's *ex parte* communications with the state trial judge concerning her personal acquaintance with an alleged police informant's murder victim and her fear that she might cry if the murder of her friend was explored further at trial. The trial judge told her not to be concerned and that the issue would probably not be discussed again. The judge, however, did not inform the defendants or counsel about these discussions with the juror. *Rushen v. Spain,* 464 U.S. at 115–116, 104 S.Ct. 453. On review, the U.S. Supreme Court found this *ex parte* communication between the judge and juror to be harmless error, because the murder was not related to the crimes at issue, and the communication was innocuous. *Id.* at 120–121, 104 S.Ct. 453.

■ The present case does not involve the judge having an innocuous *ex parte* communication with a single juror over an issue unrelated to the case. Instead, it involves the judge, without petitioner's attorney being present, giving a supplemental jury instruction to a jury that had indicated three times that it was unable to reach a verdict. Counsel was not given an opportunity to view the third note or to respond or object to the trial court's instruction. In *Rushen,* the U.S. Supreme

---

**3.** *United States v. Parent,* 954 F.2d 23 (1st Cir.1992).

Court noted that although a violation of Fed.Rule Crim.Proc. 43 may be harmless error, additional instructions from a judge to a jury, without notification to defendant or his counsel, is not. *Rushen v. Spain,* 464 U.S. at 119, fn. 4, 104 S.Ct. 453, (citing to *Rogers v. United States,* 422 U.S. 35, 38–40, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975)).

*United States v. Harris,* 9 F.3d 493 (6th Cir.1993), the case cited by respondent in support of her argument, is also distinguishable from the present case. In *Harris,* the Sixth Circuit ruled that although a defendant's right to be present at every stage of trial was technically violated when the district court failed to contact parties before responding to a note from the jury asking for copies of instructions read to them earlier, the error was harmless where the court did not make a substantive response to the note but, rather, perfunctorily responded by providing the jury with a complete written set of all jury instructions read by the court. *Harris,* 9 F.3d at 499.

In this case, the judge did not merely provide the jury with a written set of all of the jury instructions given previously by the court. After deliberating for parts of five days and sending out two deadlocked jury notes, the jury sent out a third note stating: "We are not able to reach a verdict. We are not going to reach a verdict." Unlike the trial court in *Harris,* the trial court gave a substantive response to the jury's third note. More importantly, the trial court did not merely instruct the jury to continue its deliberations, but gave the jury the following instruction:

> THE COURT: Now, ladies and gentlemen, I must remind you that you did take an oath to render a true and just verdict. But if you are to be expected to render a verdict, you must communicate, and you must talk with each other. This case lasted how many days, Mr. Hutting?
>
> MR. HUTTING [the prosecutor]: Fourteen days trial. For jury selection—
>
> THE COURT: All right. So it wouldn't be uncommon for deliberations to go on

for some time, and I might remind you that you began to deliberate I think Friday, and I don't know how you can come to the conclusion that you are not going to reach a verdict.

> Based upon your oath that you would reach a true and just verdict, we expect you will communicate. As I stated before, exchange ideas. Give your views. Give your opinions and try to come to a verdict, if possible.
>
> But if you don't communicate, you know that you can't reach a verdict. And when you took the oath, that was one of the promises that you made by raising your hand taking the oath, that you would deliberate upon a verdict, to try and reach a verdict. And we told you at the outset it would not be an easy task, but we know that you can rise to the occasion.

The giving of supplemental or additional jury instructions to a jury is a critical stage of the proceedings for which petitioner was entitled to the representation of counsel. In the present case, neither of petitioner's attorneys were present when the jury was reinstructed, nor did they have an opportunity to respond to the jury's note. The only person present during the reinstruction of the jury by the trial court was Mr. Jones, who is clearly not a licensed attorney nor a graduate of a law school.

In light of the record presented from the state trial court concerning the re-instruction of the jury by the trial court, as well as the testimony presented at the evidentiary hearing before this Court, there is no evidence to show that petitioner was represented by counsel during this critical stage in the proceedings. Because counsel was absent from this critical stage of the proceedings, habeas corpus relief is required.

### III. *ORDER*

IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS CON-

DITIONALLY GRANTED. UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY (90) DAYS OF THE DATE OF THIS OPINION, HE MAY APPLY FOR A WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY FORTHWITH.