the Eastern District of Michigan in case 00-2308 is AFFIRMED.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0082P (6th Cir.)
File Name: 02a0082p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

OLIVER FRENCH, JR.
            *Petitioner-Appellee,*

            *v.*

KURT JONES,
            *Respondent-Appellant.*

No. 00-2308

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-74520—Arthur J. Tarnow, District Judge.

Argued: January 22, 2002

Decided and Filed: March 8, 2002

Before: JONES and COLE, Circuit Judges; GWIN, District Judge.*

———————

**COUNSEL**

**ARGUED:** Olga Agnello, OFFICE OF THE PROSECUTING ATTORNEY, COUNTY OF WAYNE, Detroit, Michigan, for Appellant. David A. Moran, STATE

———————

*The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1

APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellee.  **ON BRIEF:**  Olga Agnello, OFFICE OF THE PROSECUTING ATTORNEY, COUNTY OF WAYNE, Detroit, Michigan, for Appellant.  David A. Moran, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellee.

————————

### OPINION

————————

GWIN, District Judge.  This case returns to us for a second time.  With this appeal we examine whether the district court wrongly granted a writ of habeas corpus after a Michigan court gave a supplemental instruction to a deadlocked jury.  The Michigan trial judge gave the supplemental instruction, which did not conform with the approved Michigan instruction, when the defendant's attorney was not present.

At the earlier appeal to this Court, we vacated the district court's order granting habeas relief and remanded the case for an evidentiary hearing.  At that hearing, the district court was directed to review the role of Ty Jones[1], an alleged attorney from California.  Ty Jones was present at the time the supplemental instruction was given but it was unclear whether he was licensed to practice law.  *French v. Jones*, No. 99-1436, 2000 WL 1033021, at *1–2 (6th Cir. July 18, 2000).

At the ensuing evidentiary hearing, the district court learned Jones was not an attorney and was present only to observe Cornelius Pitts, one of French's attorneys.  After finding that Ty Jones was not an attorney, the district court held that French was denied representation during a critical stage of his trial and granted his petition for a writ of habeas corpus.  *French v. Jones*, 114 F. Supp. 2d 638, 643 (E.D. Mich. 2000).

———————————

[1]Ty Jones is not related to Kurt Jones, the appellant in this case.

favor of the conclusion that the defendant's right to a fair trial and impartial jury has been violated."); *United States v. Scott*, 547 F.2d 334, 337 (6th Cir. 1977).  The trial judge's omission of the "honest convictions" component is even more troubling because an appropriate charge was included in the first supplemental instruction given to the jury. (JA. at 80).  Such an omission risks the jurors believing their responsibilities have changed.

Furthermore, the trial judge's omission of the "honest convictions" component was amplified by the trial judge telling the jurors three separate times they took an oath to reach a verdict. (J.A. at 84–85).  While unintentional, the trial judge's instruction emphasized the jurors duty to reach a unanimous verdict without assuring them that dissent was acceptable.  *See Burgos*, 55 F.3d at 940.

The time line of the jury's deliberation suggests that the third supplemental instruction had an effect.  Once they received the case, the jury deliberated for three days.  During that time, they sent out three increasingly emphatic notes saying they were deadlocked and could not reach a verdict.  Even though the trial judge twice gave them a standard deadlocked jury instruction the jury could still not reach a verdict.  Yet, less than two hours after receiving the third supplemental instruction, the jurors returned a guilty but mentally ill verdict on all counts.

In light of these facts, we conclude the trial judge's third supplemental instruction had a substantial and injurious influence on the jury's verdict that resulted in prejudice to French.

### III.  Conclusion

At the evidentiary hearing we ordered in this case, the district court determined French did not have counsel during the trial judge's supplemental jury instruction.  Because French was without counsel during a critical stage of his trial, the district court correctly granted French's petition for a writ of habeas corpus.  The judgment of the U.S. District Court for

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change an opinion if the juror is convinced it is erroneous; and

(v) that no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in paragraph (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

*People v. Pollick*, 448 Mich. 376, 381–82, 531 N.W.2d 159, 162 (1995).

The trial judge's supplemental instruction did not remind jurors they should not give up their honest convictions solely because of the opinion of the other jurors or in order to reach a verdict. (J.A. at 84–85). Excluding this aspect of an *Allen* instruction increases its coercive effect. *See United States v. Burgos*, 55 F.3d 933, 939–40 (4th Cir. 1995); *Jiminez v. Myers*, 40 F.3d 976, 981 n.5 (9th Cir. 1993) ("A trial court's failure to give such a cautionary instruction weighs heavily in

With this appeal, we decide whether a defendant whose lawyer was not present when the trial judge gave a supplemental instruction to a deadlocked jury is entitled to habeas relief. Finding Petitioner French was denied counsel during a critical stage of his trial, we affirm the district court's grant of a writ of habeas corpus.

I.

On September 10, 1994, French shot four fellow union officials at the Ford Motor Company Rouge facility in Dearborn, Michigan. After trial to a jury,[2] French was found guilty but mentally ill[3] of one count of first-degree murder, Mich. Comp. Laws § 750.316, one count of second-degree murder, Mich. Comp. Laws § 750.317, two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, and one count of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. The Michigan trial court sentenced French to life imprisonment without parole for the first-degree murder conviction, fifteen to thirty years imprisonment for the each of the second-degree murder and assault with intent to murder convictions, and two

---

[2]There was no dispute French committed the shootings. Instead, the issue at trial was French's mental state at the time of the shootings. At trial, French presented expert testimony and other evidence to show he was legally insane on the day of the shootings because an erroneously prescribed overdose of a powerful hypertension drug had combined with a pre-existing mental disorder to make him paranoid and psychotic. In response, the government presented expert testimony that French was legally sane on the day of the shootings.

[3]Michigan law allows a verdict of "guilty but mentally ill." *See* Mich Comp. Laws § 768.36. To return such a verdict, a jury must find the following beyond a reasonable doubt: (1) the defendant is guilty of an offense; (2) the defendant was mentally ill at the time of the offense; (3) the defendant was not legally insane at the time of the offense. *See* Mich Comp. Laws § 768.36(1). A person found guilty but mentally ill is sentenced the same as if he were simply found guilty of the offense. Mich. Comp. Laws § 768.36(3). The only difference between the two verdicts is that the department of corrections is responsible for evaluating the defendant and providing any required psychiatric treatment. *See id.*

years consecutive imprisonment for the firearm conviction. At trial, two attorneys, Cornelius Pitts and Monsey Wilson, represented French. Ty Jones was also present at defense counsel's table for portions of the trial.

The confusion surrounding this case stems from representations made by Pitts and Wilson. At the beginning of the trial, Pitts introduced Jones to the prosecutor and trial judge as an attorney from California who specialized in jury selection. Pitts said Jones was present to assist with the trial. Based on Pitts's representation, the trial judge allowed Jones to remain at the defense table.

During jury selection, Pitts introduced Jones as "counsel from California" who was assisting with the trial. Jones was present at the defense table every day of trial but never spoke in the presence of the jury.

At the evidentiary hearing held in this matter, the district court learned Jones was not a licensed attorney. While he had attended one year of law school at New York University, Jones worked as a motion picture consultant and screenwriter in Los Angeles. Jones observed the trial as background for the development of a television series based on the Detroit legal system.

At the evidentiary hearing, Pitts testified that Jones told him that he was a lawyer. Although Pitts did not intend for Jones to participate in the trial, Pitts said he introduced Jones as "counsel from California" to give the impression of a large defense team.

French's trial took more than two weeks before being submitted to the jury. After receiving their instructions and choosing a foreperson, the jury recessed on Thursday, April 27, 1995. The jury reconvened and began deliberating the morning of Friday, April 28, 1995. During that day, the jury twice requested copies of trial materials. On both occasions, the prosecutor, Wilson, and the trial judge discussed the notes and sent the requested materials to the jury.

### B.

We also note that the trial judge's supplemental instruction significantly deviated from the model Michigan instruction and likely had a substantial and injurious influence on the jury's verdict. *See Barker v. Yukins*, 199 F.3d 867, 872–73 (6th Cir. 1999) (holding the petitioner met § 2254(d)(1)'s "unreasonable application" standard by showing the trial court's failure to give a proper jury instruction had a substantial and injurious effect on the jury's verdict). In *Sullivan v. People*, 392 Mich. 324, 220 N.W.2d 441 (1974), Michigan adopted the American Bar Association's ("ABA") standard jury instruction 5.4 for addressing a deadlocked jury, *Sullivan*, 392 Mich. at 341–42, 220 N.W.2d at 450.[7] Michigan adopted the ABA's standard instruction to minimize any coercive effect of jury instructions given pursuant to *Allen v. United States*, 164 U.S. 492 (1896). At the time of French's trial, ABA standard jury instruction 5.4 read:

a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

---

[7] *Sullivan* held that "any substantial departure" from ABA standard instruction 5.4 would be grounds for reversible error. *Sullivan*, 392 Mich. at 342, 220 N.W.2d at 450. In *People v. Hardin*, 421 Mich. 296, 365 N.W.2d 101 (1984), the Michigan Supreme Court held that substantial deviation from ABA standard jury instruction 5.4 only warranted reversal if the given instruction was unduly coercive. *Hardin*, 421 Mich. at 314–15, 365 N.W.2d at 109. In deciding if an instruction was unduly coercive, a court considers (1) whether the instruction can cause a juror to abandon his conscientious dissent and defer to the majority in order to reach an agreement; (2) whether the trial court required, or threatened to require, the jury to deliberate for an unreasonable length of time or for unreasonable intervals; or (3) whether the instructions call for the jury to exercise its civic duty in reaching a unanimous verdict contains the message that their failure to reach a verdict is a failure of the jury's purpose. *Id.* at 316, 365 N.W.2d at 110.

stating that "the right to counsel is 'so basic to a fair trial that [its] infraction can never be treated as harmless error.'" *Penson v. Ohio*, 488 U.S. 75, 88 (1988) (quoting *Chapman v. California*, 388 U.S. 18, 23 (1967)).  As the Court most recently stated in a habeas case, "[t]he existence of [structural] defects–deprivation of the right to counsel, for example–requires automatic reversal of the conviction because they infect the entire trial process."  *Brecht v. Abrahamson*, 507 U.S. 619, 629–30 (1993).

Furthermore, the appellant wrongly characterizes *Rushen*. In *Rushen*, the Court did not say harmless error analysis applies to every occurrence of attorney absence at a critical stage of trial.    Instead, the Court held that ex parte communications between a judge and juror should be analyzed for harmless error because "'it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.'"  *Rushen*, 464 U.S. at 118–19 (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)).

The present case is vastly different from the incidental contact between a judge and juror at issue in *Rushen*.  In this case, the trial judge delivered a supplemental instruction to a deadlocked jury.   French's attorneys did not have an opportunity to respond to the jury's note nor were they present when the trial judge gave the supplemental instruction.  The uncertainty of the prejudice French suffered because he was not represented by counsel during this critical stage of his trial makes the outcome of his trial unreliable.  *See Roe*, 528 U.S. at 483; *Cronic*, 466 U.S. at 659 n.25.

*Cronic* correctly summarizes federal law when it states that absence of counsel during a critical stage of a trial amounts to constitutional error. *Cronic*, 466 U.S. at 659 n.25. In light of clear federal law, the Michigan courts unreasonably applied harmless error analysis to French's deprivation of counsel during the supplemental instruction.   The district court properly granted the writ of habeas corpus.

Late on Friday afternoon, the jury sent out a third note to which the trial judge did not immediately respond. Instead, the trial judge recessed the trial and excused the jury for the weekend.

On the morning of Monday, May 1, 1995, the trial judge read the note to Pitts and the prosecutor: "We can't reach a unanimous decision.  Our minds are set."  Pitts requested a mistrial, but the trial judge read the jury Michigan's standard deadlocked jury instruction.  The jury continued to deliberate until late afternoon, when they sent out a second note.  The second note also said the jury was unable to reach a decision. The trial judge again recessed the trial and excused the jury for the day.

At 9:30 a.m. on May 2, 1995, the trial judge again instructed the jury and directed them to continue deliberations. After continuing deliberations, the jury sent out a third note at 11:00 a.m.: "We are not able to reach a verdict. We are *not* going to reach a verdict."   The trial judge responded by sending the jury to lunch and instructing the parties to appear at 2:00 p.m.

At 2:00 p.m., neither Pitts nor Wilson had returned to the courtroom.  The trial judge asked Jones, who was present, to contact the two attorneys.  Jones was unable to contact Pitts or Wilson.  At 2:07 p.m., without Pitts or Wilson present, the trial judge brought the jury in and gave them a supplemental jury instruction.  Unlike the first two instructions, the third instruction was not the standard deadlocked jury instruction.[4]

---

[4]The relevant part of the trial judge's third instruction to the jury is as follows:

> THE COURT:  Now, ladies and gentlemen, I must remind you that you did take an oath to render a true and just verdict. But if you are to be expected to render a verdict, you must communicate, and you must talk with each other.
>     This case lasted how many days, Mr. Hutting? Approximately 16 days?
> MR. HUTTING: Fourteen days trial.  For jury selection –

The trial judge dismissed the jury for the day approximately one hour after giving the supplemental instruction.

The next morning, Pitts requested a mistrial because he felt the trial judge's supplemental instruction was coercive. While Pitts was arguing for a mistrial, the jury returned its verdict.

French moved the Michigan trial court to order a new trial, arguing he was prejudiced because his attorneys had not been present during the third supplemental jury instruction. The trial judge noted French's argument had some merit, but denied the motion for a new trial.

On July 15, 1997, the Michigan Court of Appeals affirmed the petitioner's convictions. The court held that the absence of defense counsel during a critical stage of the trial was subject to harmless error analysis. The court of appeals found the error harmless in French's case. On September 22, 1998, the Michigan Supreme Court denied the petitioner leave to appeal.

---

THE COURT: All right.  So it wouldn't be uncommon for deliberations to go on for some time, and I might remind you that you began to deliberate I think Friday, and I don't know how you can come to the conclusion that you are not going to reach a verdict.

Based upon your oath that you would reach a true and just verdict, we expect you will communicate.  As I stated before, exchange ideas.  Give your views.  Give your opinions and try to come to a verdict, if at all possible.

But if you don't communicate, you know that you can't reach a verdict.  And when you took the oath, that was one of the promises that you made by raising your hand taking the oath, that you would deliberate upon a verdict, to try to reach a verdict.  And we told you at the outset it would not be an easy task, but we know that you can rise to the occasion.

So we'll ask that you return to the jury room.

Thank you.

(J.A. at 84–85).

---

accused is denied counsel at a critical stage of his trial" is an accurate statement of law. *Id.* at 659.  Because *Williams* instructs courts to rely only on the holding of cases when deciding clearly established federal law for habeas petition purposes, *Williams*, 529 U.S. at 412, the appellant says the district court should not have relied on this statement of law because the language was not applicable to *Cronic*'s ultimate holding.

Instead, the appellant says the facts of this case resemble those in *Rushen v. Spain*, 464 U.S. 114 (1983).  In *Rushen*, the Court applied harmless error analysis to a trial judge's ex parte communications with a juror about the juror's personal interaction with a police informant currently testifying before the juror.  *Rushen*, 464 U.S. at 120–21.  Neither defense counsel nor the prosecutor learned of the ex parte communications until after the trial.

The *Rushen* Court found that the post-trial hearing held on the matter provided sufficient evidence the communication between the judge and juror was innocuous and that no bias infected the jury's deliberations. *Id.*  The appellant says the Court's use of harmless analysis in *Rushen* supports his assertion that we should analyze the present case for harmless error.

We disagree.  Despite the appellant's attempt to characterize *Cronic*'s language as dicta, the Court has often held, both before and after *Cronic*, that absence of counsel during a critical stage of a trial is per se reversible error.  Six years before *Cronic*, the Court held in *Holloway v. Arkansas*, 435 U.S. 475 (1978), that "when a defendant is deprived of the presence and assistance of his attorney, either throughout the prosecution or during a critical stage in, at least, the prosecution of a capital offense, reversal is automatic." *Holloway*, 435 U.S. at 489 (citing *Gideon v. Wainwright*, 372 U.S. 335, 345 (1963), and *White v. Maryland*, 373 U.S. 59, 60 (1963)).  Four years after *Cronic*, the Court reiterated that harmless error analysis does not apply to Sixth Amendment claims involving the absence of counsel at a critical stage by

suffered a total deprivation of counsel.[6]   The appellant says the present case does not involve the complete deprivation of counsel because the trial court's actions did not prevent counsel from advising French.  Without such an act by the trial court, the appellant says French's lack of counsel during the supplemental instruction is not a deprivation because it does not fall within any of the fact paradigms the Supreme Court describes as deprivations under the Sixth Amendment.

As further support for its position that the district court erred, the appellant argues the district court's reliance on *Cronic* is misplaced.  In *Cronic*, the Court reversed the court of appeals' inference that a defendant had received ineffective assistance of counsel because of the attorney's inexperience, limited access to witnesses, and short time to investigate and prepare for a complex trial.  *Cronic*, 466 U.S. at 666.  The Court remanded the case to consider whether specific alleged errors made by defense counsel were sufficient to support an ineffective assistance of counsel claim.  *Id.* at 666–67.  The appellant acknowledges *Cronic*'s statement in dicta that "[t]he presumption that counsel's assistance is essential requires [a court] to conclude that a trial is unfair if the

---

[6]The appellant says the following cases describe structural errors because they involve the total deprivation of counsel: *Geders v. United States*, 425 U.S. 80 (1976) (a trial court's order preventing a defendant from consulting with his attorney at all during a recess between his direct and cross-examination); *Herring v. New York*, 422 U.S. 853 (1975) (the trial court's refusal to allow counsel to be heard in summation of the evidence); *Brooks v. Tennessee*, 406 U.S. 605 (1972) (a statute requiring a defendant to testify before any other defense evidence was presented deprived the defendant of the advice of counsel in making the decision); *White v. Maryland*, 373 U.S. 59 (1963) (the denial of counsel at a preliminary hearing where a plea was entered); *Gideon v Wainright*, 372 U.S. 335 (1963) (total deprivation of the right to counsel during trial); *Hamilton v. Alabama*, 368 U.S. 52 (1961) (the denial of counsel at arraignment, the stage at which insanity must be pleaded or the defense forfeited); *Ferguson v. Georgia*, 365 U.S. 570 (1961) (a statute permitting the admission only of the defendant's unsworn statement and the denial of the right to have counsel examine the defendant regarding it); *Williams v. Kaiser*, 323 U.S. 471 (1945) (the refusal to appoint counsel before entry of the defendant's plea).

---

On October 16, 1998, the petitioner filed a petition in federal court for a writ of habeas corpus.  On March 25, 1999, the district court granted the writ.  As discussed above, the warden appealed, and we vacated the district court's decision and remanded for an evidentiary hearing.

Now, with a fully developed record before us, we review the district court's decision to grant French's petition for a writ of habeas corpus.  As grounds for the writ, French argues that the Michigan trial judge denied his constitutional right to the assistance of counsel when it supplemented its instruction to the jury when neither of his attorneys were present.

## II.

We review a district court's grant of habeas relief de novo.  *See, e.g.*, *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997).

In determining whether to issue a habeas writ, the district court's review of a state court decision is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2241 et seq. ("AEDPA").[5] *Id.*  The AEDPA only provides habeas relief for a state prisoner in certain circumstances:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[5]We decide this case under the AEDPA because French filed his petition for a writ of habeas corpus in October 1998, well after AEDPA's effective date of April 24, 1996.  *See Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999).

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2001).

The question of whether the trial judge deprived French of his right to counsel during the supplemental jury instruction is a mixed question of law and fact. *See Strickland v. Washington*, 466 U.S. 668, 698 (1984). In a habeas case, we apply the "unreasonable application" prong of § 2254(d)(1) to a mixed question of law and fact. *See* 28 U.S.C. § 2254(d)(1); *Harpster*, 128 F.3d at 326–27.

The recent Supreme Court decision of *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the meaning of the operative clauses in §2254(d)(1). *Williams* stated that federal courts are to find "clearly established Federal law" in the holdings of the Supreme Court, as opposed to its dicta, at the time of the relevant state court decision. *Williams*, 529 U.S. at 412; *see also Harris v. Stovall*, 212 F.3d 940, 944 (6th Cir. 2000).

*Williams* then went on to clarify the situations in which a court could grant a writ of habeas corpus under § 2254(d)(1):

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412–13. Therefore, we look to see if the Michigan courts have unreasonably applied a governing legal principle identified by the Supreme Court when they applied harmless error analysis to French's deprivation of counsel during the supplemental instruction.

## A.

Both parties agree that "the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice." *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000); *see also United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984). In our order remanding this case to the district court for an evidentiary hearing, we agreed with the district court that a supplemental jury instruction is a "critical stage" of a criminal proceeding. *French*, 2000 WL 1033021, at *3 (citing *Rogers v. United States*, 422 U.S. 35 (1975), and *Shields v. United States*, 273 U.S. 583 (1927)); *see also Curtis v. Duval*, 124 F.3d 1, 4 (1st Cir. 1997). In our previous decision in this matter, we noted that the Michigan courts conceded that the supplemental instruction was a critical stage of the trial. *See French*, 2000 WL 1033021, at *3 n.5. In light of our holding, we remanded the case to determine the exact nature of Jones's participation at the trial.

Once the evidentiary hearing established Jones was not an attorney, French argued the Supreme Court has "uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Cronic*, 466 U.S. at 659 n.25. Since the supplemental jury instruction was a critical stage of the trial, French said reversal should be automatic. The district court agreed with French. Citing *Cronic*, the district court found a structural defect like the deprivation of counsel during a critical stage of the trial required automatic reversal. *See French*, 114 F. Supp. 2d at 642.

Michigan argues the district court erred when it found French's lack of counsel during the supplemental instruction to be a structural error. Instead, the appellant says French's lack of counsel during the supplemental instruction was a trial error, subject to harmless error analysis.

In support of his position, the appellant says previous Supreme Court decisions indicate that an error during trial only requires automatic reversal when a defendant has