RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0194P (6th Cir.)
File Name: 03a0194p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

OLIVER FRENCH, JR.,
     *Petitioner-Appellee,*

    *v.*          No. 00-2308

KURT JONES,
    *Respondent-Appellant.*

On Remand from the United
States Supreme Court.

Decided and Filed: June 11, 2003

Before: COLE, Circuit Judge; GWIN, District Judge.[*]

---

**COUNSEL**

**ON SUPPLEMENTAL BRIEF:** Olga Agnello, OFFICE OF THE PROSECUTING ATTORNEY, Detroit, Michigan, for Appellant. David A. Moran, Detroit, Michigan, for Appellee.

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

---

---

**OPINION**

---

GWIN, District Judge. This case returns to us for a third time. Most recently, we affirmed the judgment of the district court. *French v. Jones,* 282 F.3d 893 (6th Cir. 2002). Thereafter, the United States Supreme Court granted respondent's petition for writ of certiorari, vacated our prior judgment, and remanded the case to our Court for further consideration in light of its decision in *Bell v. Cone,* 535 U.S. 685 (2002). *French v. Jones,* 535 U.S. 1109 (2002). Pursuant to the Supreme Court's order, the case is again before us for our determination.

With this appeal we examine whether the district court wrongly granted a writ of habeas corpus after a Michigan court gave a supplemental instruction to a deadlocked jury. The Michigan trial court gave the supplemental instruction, which did not conform with the approved Michigan instruction, when the defendant's attorney was not present.

At the first appeal to this Court, we vacated the district court's order granting habeas relief and remanded the case for an evidentiary hearing. At that hearing, the district court was directed to review the role of Ty Jones, an alleged attorney from California. Ty Jones was present at the time the supplemental instruction was given but it was unclear whether he was licensed to practice law. *French v. Jones,* No. 99-1436, 2000 WL 1033021, at *1–2 (6th Cir. July 18, 2000).

At the ensuing evidentiary hearing, the district court learned Jones was not an attorney and was present only to observe Cornelius Pitts, one of French's attorneys. After finding that Ty Jones was not an attorney, the district court held that French was denied representation during a critical stage of his trial and granted his petition for a writ of habeas corpus. *French v. Jones,* 114 F. Supp. 2d 638, 643 (E.D. Mich. 2000).

In our previous decision, we concluded that a defendant whose lawyer was not present when the trial judge gave a supplemental instruction to a deadlocked jury is entitled to habeas relief. After carefully reviewing the *Cone* decision, we see no reason to depart from our previous holding. Therefore, finding Petitioner French was denied counsel during a critical stage of his trial, we affirm the district court's grant of a writ of habeas corpus.

## I.

On September 10, 1994, French shot four fellow union officials at the Ford Motor Company Rouge facility in Dearborn, Michigan. After trial to a jury,[1] French was found guilty but mentally ill[2] of one count of first-degree murder, Mich. Comp. Laws § 750.316, one count of second-degree murder, Mich. Comp. Laws § 750.317, two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, and one count of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. The Michigan trial court sentenced French to life imprisonment without parole for the first-degree murder conviction, fifteen

---

[1]There was no dispute French committed the shootings. Instead, the issue at trial was French's mental state at the time of the shootings. At trial, French presented expert testimony and other evidence to show he was legally insane on the day of the shootings because an erroneously prescribed overdose of a powerful hypertension drug had combined with a pre-existing mental disorder to make him paranoid and psychotic. In response, the government presented expert testimony that French was legally sane on the day of the shootings.

[2]Michigan law allows a verdict of "guilty but mentally ill." *See* Mich Comp. Laws § 768.36. To return such a verdict, a jury must find the following beyond a reasonable doubt: (1) the defendant is guilty of an offense; (2) the defendant was mentally ill at the time of the offense; (3) the defendant was not legally insane at the time of the offense. *See* Mich Comp. Laws § 768.36(1). A person found guilty but mentally ill is sentenced the same as if he were simply found guilty of the offense. Mich. Comp. Laws § 768.36(3). The only difference between the two verdicts is that the department of corrections is responsible for evaluating the defendant and providing any required psychiatric treatment. *See id.*

to thirty years imprisonment for each of the second-degree murder and assault with intent to murder convictions, and two years consecutive imprisonment for the firearm conviction. At trial, two attorneys, Cornelius Pitts and Monsey Wilson, represented French. Ty Jones was also present at defense counsel's table for portions of the trial.

The confusion surrounding this case stems from representations made by Pitts and Wilson. At the beginning of the trial, Pitts introduced Jones to the prosecutor and trial judge as an attorney from California who specialized in jury selection. Pitts said Jones was present to assist with the trial. Based on Pitts's representation, the trial judge allowed Jones to remain at the defense table.

During jury selection, Pitts again introduced Jones as "counsel from California" who was assisting with the trial. Jones was present at the defense table every day of trial but never spoke in the presence of the jury.

At the evidentiary hearing held in this matter, the district court learned Jones was not a licensed attorney. While he had attended one year of law school at New York University, Jones worked as a motion picture consultant and screenwriter in Los Angeles. Jones observed the trial as background for the development of a television series based on the Detroit legal system.

At the evidentiary hearing, Pitts testified that Jones told him that he was a lawyer. Although Pitts did not intend for Jones to participate in the trial, Pitts said he introduced Jones as "counsel from California" to give the impression of a large defense team.

French's trial took more than two weeks before being submitted to the jury. After receiving instructions and choosing a foreperson, the jury recessed Thursday, April 27, 1995. The jury reconvened and began deliberating the morning of Friday, April 28, 1995. During that day, the jury twice requested copies of trial materials. On both occasions,

the prosecutor, Wilson, and the trial judge discussed the notes and sent the requested materials to the jury.

Late on Friday afternoon, the jury sent out a third note to which the trial judge did not immediately respond. Instead, the trial judge recessed the trial and excused the jury for the weekend.

On the morning of Monday, May 1, 1995, the trial judge read the note to Pitts and the prosecutor: "We can't reach a unanimous decision. Our minds are set." Pitts requested a mistrial, but the trial judge read the jury Michigan's standard deadlocked jury instruction. The jury continued to deliberate until late afternoon, when they sent out a second note. The second note also said the jury was unable to reach a decision. The trial judge again recessed the trial and excused the jury for the day.

At 9:30 a.m. on May 2, 1995, the trial judge again instructed the jury and directed them to continue deliberations. After continuing deliberations, the jury sent out a third note at 11:00 a.m.: "We are not able to reach a verdict. We are not going to reach a verdict." The trial judge responded by sending the jury to lunch and instructing the parties to appear at 2:00 p.m.

At 2:00 p.m., neither Pitts nor Wilson had returned to the courtroom. The trial judge asked Jones, who was present, to contact the two attorneys. Jones was unable to contact Pitts or Wilson. At 2:07 p.m., without Pitts or Wilson present, the trial judge brought the jury in and gave them a supplemental jury instruction. Unlike the first two instructions, the third instruction was not the standard deadlocked jury instruction.[3]

_____

[3]The relevant part of the trial judge's third instruction to the jury is as follows:

THE COURT: Now, ladies and gentlemen, I must remind you that you did take an oath to render a true and just verdict. But if you are to be expected to render a verdict, you must

The trial judge dismissed the jury for the day approximately one hour after giving the supplemental instruction.

The next morning, Pitts requested a mistrial because he felt the trial judge's supplemental instruction was coercive. While Pitts was arguing for a mistrial, the jury returned its verdict.

French moved the Michigan trial court to order a new trial, arguing he was prejudiced because his attorneys had not been present during the third supplemental jury instruction. The trial judge noted French's argument had some merit, but denied the motion for a new trial.

On July 15, 1997, the Michigan Court of Appeals affirmed the petitioner's convictions. The court held that the absence of defense counsel during a critical stage of the trial was subject to harmless error analysis. The court of appeals found the error harmless in French's case. On September 22, 1998,

_____

communicate, and you must talk with each other.
This case lasted how many days, Mr. Hutting? Approximately 16 days?
MR. HUTTING: Fourteen days trial. For jury selection –
THE COURT: All right. So it wouldn't be uncommon for deliberations to go on for sometime, and I might remind you that you began to deliberate I think Friday, and I don't know how you can come to the conclusion that you are not going to reach a verdict.
Based upon your oath that you would reach a true and just verdict, we expect you will communicate. As I stated before, exchange ideas. Give your views. Give your opinions and try to come to a verdict, if at all possible.
But if you don't communicate, you know that you can't reach a verdict. And when you took the oath, that was one of the promises that you made by raising your hand taking the oath, that you would deliberate upon a verdict, to try to reach a verdict. And we told you at the outset it would not be an easy task, but we know that you can rise to the occasion. So we'll ask that you return to the jury room.
Thank you.
(J.A. at 84–85).

the Michigan Supreme Court denied the petitioner leave to appeal.

On October 16, 1998, the petitioner filed a petition in federal court for a writ of habeas corpus. On March 25, 1999, the district court granted the writ. As discussed above, the warden appealed, and we vacated the district court's decision and remanded for an evidentiary hearing.

After the evidentiary hearing and with a fully developed record before us, we reviewed the district court's decision to grant French's petition for a writ of habeas corpus. As grounds for the writ, French argued that the Michigan Court denied his constitutional right to the assistance of counsel when it supplemented its instruction to the jury when no attorney for French was present. We affirmed the judgment of the district court and held that French was denied counsel during a critical stage of his trial. The respondent petitioned the United States Supreme Court for a writ of certiorari. The Supreme Court granted the petition and remanded the case to our Court for reconsideration in light of *Bell v. Cone,* 535 U.S. 685 (2002).

## II.

Despite the Supreme Court's order vacating and remanding the case for our redetermination, our standard of review remains unchanged. We review a district court's grant of habeas relief de novo. *See, e.g., Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997).

In determining whether to issue a habeas writ, the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2241 *et seq.* ("AEDPA")[4] govern the district court's review of a state court decision. *Id.* The

---

[4] We decide this case under the AEDPA because French filed his petition for a writ of habeas corpus in October 1998, well after AEDPA's effective date of April 24, 1996. *See Barker v. Yukins,* 199 F.3d 867, 871 (6th Cir. 1999).

AEDPA only provides habeas relief for a state prisoner in certain circumstances:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2001).

The question of whether the trial judge deprived French of his right to counsel during the supplemental jury instruction is a mixed question of law and fact. *See Strickland v. Washington,* 466 U.S. 668, 698 (1984). In a habeas case, we apply the "unreasonable application" prong of § 2254(d)(1) to a mixed question of law and fact. *See* 28 U.S.C. § 2254(d)(1); *Harpster,* 128 F.3d at 326–27.

The recent Supreme Court decision of *Williams v. Taylor,* 529 U.S. 362 (2000), clarified the meaning of the operative clauses in §2254(d)(1). *Williams* stated that federal courts are to find "clearly established Federal law" in the holdings of the Supreme Court, as opposed to its dicta, at the time of the relevant state court decision. *Williams,* 529 U.S. at 412; *see also Harris v. Stovall,* 212 F.3d 940, 944 (6th Cir. 2000).

The *Williams* Court then went on to clarify the situations in which a court could grant a writ of habeas corpus under § 2254(d)(1):

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412–13. Therefore, we look to see if the Michigan courts unreasonably applied a governing legal principle identified by the Supreme Court when they applied harmless error analysis to French's claim of deprivation of counsel during the supplemental instruction.

### A.

Both parties agree that "the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice." *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000); *see also United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984). In our order remanding this case to the district court for an evidentiary hearing, we agreed with the district court that a supplemental jury instruction is a "critical stage" of a criminal proceeding. *French*, 2000 WL 1033021, at *3 (citing *Rogers v. United States*, 422 U.S. 35 (1975), and *Shields v. United States*, 273 U.S. 583 (1927)); *see also Curtis v. Duval*, 124 F.3d 1, 4 (1st Cir. 1997). In our first decision in this matter, we noted that the Michigan courts conceded that the supplemental instruction was a critical stage of the trial. *See French*, 2000 WL 1033021, at *3 n.5. In light of our holding, we remanded the case to the district court to determine the exact nature of Jones's participation at the trial.

Once the evidentiary hearing established Jones was not an attorney, French argued that the Supreme Court has "uniformly found constitutional error without any showing of

prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Cronic*, 466 U.S. at 659 n.25. Since the supplemental jury instruction was a critical stage of the trial, French contended that reversal should be automatic. The district court agreed with French. Citing *Cronic*, the district court found a structural defect like the deprivation of counsel during a critical stage of the trial required automatic reversal. *See French*, 114 F. Supp. 2d at 642.

The Warden argues that the district court erred when it found French's lack of counsel during the supplemental instruction to be a structural error. Instead, the appellant says French's lack of counsel during the supplemental instruction was a trial error, subject to harmless error analysis.

In support of his position, the appellant says previous Supreme Court decisions indicate that an error during trial only requires automatic reversal when a defendant has suffered a total deprivation of counsel.[5] The appellant says the present case does not involve the complete deprivation of counsel because the trial court's actions did not prevent

---

[5] The appellant says the following cases describe structural errors because they involve the total deprivation of counsel: *Geders v. United States*, 425 U.S. 80 (1976) (a trial court's order preventing a defendant from consulting with his attorney at all during a recess between his direct and cross-examination); *Herring v. New York*, 422 U.S. 853 (1975) (the trial court's refusal to allow counsel to be heard in summation of the evidence); *Brooks v. Tennessee*, 406 U.S. 605 (1972) (a statute requiring a defendant to testify before any other defense evidence was presented deprived the defendant of the advice of counsel in making the decision); *White v. Maryland*, 373 U.S. 59 (1963) (the denial of counsel at a preliminary hearing where a plea was entered); *Gideon v Wainright*, 372 U.S. 335 (1963) (total deprivation of the right to counsel during trial); *Hamilton v. Alabama,* 368 U.S. 52 (1961) (the denial of counsel at arraignment, the stage at which insanity must be pleaded or the defense forfeited); *Ferguson v. Georgia*, 365 U.S. 570 (1961) (a statute permitting the admission only of the defendant's unsworn statement and the denial of the right to have counsel examine the defendant regarding it); *Williams v. Kaiser*, 323 U.S. 471 (1945) (the refusal to appoint counsel before entry of the defendant's plea).

counsel from advising French. Without such an act by the trial court, the appellant says French's lack of counsel during the supplemental instruction is not a deprivation because it does not fall within any of the fact paradigms the Supreme Court describes as deprivations under the Sixth Amendment.

As further support for its position that the district court erred, the appellant argues the district court's reliance on *Cronic* is misplaced. In *Cronic*, the Court reversed the court of appeals' inference that a defendant had received ineffective assistance of counsel because of the attorney's inexperience, limited access to witnesses, and short time to investigate and prepare for a complex trial. *Cronic*, 466 U.S. at 666. The Court remanded the case to consider whether specific alleged errors made by defense counsel were sufficient to support an ineffective assistance of counsel claim. *Id.* at 666–67. The appellant acknowledges *Cronic*'s statement in dicta that "[t]he presumption that counsel's assistance is essential requires [a court] to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial" is an accurate statement of law. *Id.* at 659. Because *Williams* instructs courts to only rely on the holding of cases when deciding clearly established federal law for habeas petition purposes, *Williams*, 529 U.S. at 412, the appellant argues the district court should not have relied on this statement of law because the language was not applicable to *Cronic*'s ultimate holding.

Instead, the appellant says the facts of this case resemble those in *Rushen v. Spain*, 464 U.S. 114 (1983). In *Rushen*, the Court applied harmless error analysis to a trial judge's ex parte communications with a juror about the juror's personal interaction with a police informant currently testifying before the juror. *Rushen*, 464 U.S. at 120–21. Neither defense counsel nor the prosecutor learned of the ex parte communications until after the trial.

The *Rushen* Court found that the post-trial hearing held on the matter provided sufficient evidence the communication between the judge and juror was innocuous and that no bias

infected the jury's deliberations. *Id.* The appellant says the Court's use of harmless error analysis in *Rushen* supports his assertion that we should analyze the present case for harmless error.

We disagree. Despite the appellant's attempt to characterize *Cronic*'s language as dicta, the Court has often held, both before and after *Cronic*, that absence of counsel during a critical stage of a trial is per se reversible error. Six years before *Cronic*, the Court held in *Holloway v. Arkansas*, 435 U.S. 475 (1978), that "when a defendant is deprived of the presence and assistance of his attorney, either throughout the prosecution or during a critical stage in, at least, the prosecution of a capital offense, reversal is automatic." *Holloway*, 435 U.S. at 489 (citing *Gideon v. Wainwright*, 372 U.S. 335, 345 (1963), and *White v. Maryland*, 373 U.S. 59, 60 (1963)).

Four years after *Cronic*, the Court reiterated that harmless error analysis does not apply to Sixth Amendment claims involving the absence of counsel at a critical stage by stating that "the right to counsel is 'so basic to a fair trial that [its] infraction can never be treated as harmless error.'" *Penson v. Ohio*, 488 U.S. 75, 88 (1988) (quoting *Chapman v. California*, 388 U.S. 18, 23 (1967)). As the Court most recently stated in a habeas case, "[t]he existence of [structural] defects–deprivation of the right to counsel, for example–requires automatic reversal of the conviction because they infect the entire trial process." *Brecht v. Abrahamson*, 507 U.S. 619, 629–30 (1993).

Furthermore, the appellant wrongly characterizes *Rushen*. In *Rushen*, the Court did not say harmless error analysis applies to every occurrence of attorney absence at a critical stage of trial. Instead, the Court held that ex parte communications between a judge and juror should be analyzed for harmless error because "'it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.'" *Rushen*, 464 U.S.

at 118–19 (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)).

The present case is vastly different from the incidental contact between a judge and juror at issue in *Rushen*. In this case, the trial judge delivered a supplemental instruction to a deadlocked jury. French's attorneys did not have an opportunity to respond to the jury's note nor were they present when the trial judge gave the supplemental instruction. The uncertainty of the prejudice French suffered because he was not represented by counsel during this critical stage of his trial makes the outcome of his trial unreliable. *See Roe*, 528 U.S. at 483; *Cronic*, 466 U.S. at 659 n.25.

*Cronic* correctly summarizes federal law when it states that absence of counsel during a critical stage of a trial amounts to constitutional error. *Cronic*, 466 U.S. at 659 n.25. In light of clear federal law, the Michigan courts unreasonably applied harmless error analysis to French's deprivation of counsel during the supplemental instruction. The district court properly granted the writ of habeas corpus.

The decision in *Cone* does not alter our analysis. In *Cone*, the Court defined the type of ineffective-assistance claims that fit within *Cronic's* second exception to the *Strickland* rule. *Cone*, 535 U.S. at 695-97. Under the *Strickland* rule, petitioners alleging a deprivation of their right to counsel must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that a reasonable probability exists that, but for counsel's substandard performance, the outcome would have been different. *Strickland*, 466 U.S. at 687. The *Cronic* Court held that the petitioner need not prove actual prejudice in the following three categories of circumstances: (1) when the petitioner was denied counsel at a critical stage of the proceedings; (2) when the petitioner's counsel "failed to subject the prosecution's case to meaningful adversarial testing"; and (3) when the circumstances of the trial prevent counsel from affording effective representation. *Cronic*, 466 U.S. at 656.

In *Cone*, the petitioner claimed his counsel had been ineffective when he failed to adduce mitigating evidence and waived final argument at the sentencing phase of the trial. *Cone*, 535 U.S. at 697. A panel of our Court below applied the second of *Cronic*'s three exceptions to the *Strickland* rule, holding that those failures were so egregious that they did not require a showing of actual prejudice. *See Cone v. Bell*, 243 F.3d 961, 979 (6th Cir.2001). The Supreme Court reversed that decision because the petitioner did not allege that trial counsel entirely failed to subject the prosecution's case to meaningful adversarial testing, but alleged only that trial counsel failed at "specific points." *Cone*, 535 U.S. at 697. In reaching this conclusion, the Court announced that to apply the second *Cronic* exception, "the attorney's failure must be complete." *Id.*

French does not argue that his counsel failed to subject the prosecution's case to meaningful adversarial testing. Instead, he argues that the first *Cronic* exception applies because he says that he was completely denied counsel during a critical stage of a judicial proceeding. As discussed, *Cone* did not deal with a denial of counsel claim. Nor does the logic of *Bell's* holding that the attorney's failure must be complete extend to claims based on the denial of counsel at a critical stage of the proceedings. Therefore, we conclude that *Cone* does not apply to claims of denial of counsel during a critical stage.[6]

### III. Conclusion

At the evidentiary hearing we ordered in this case, the district court determined French did not have counsel during

---

[6]We are not alone in this conclusion. The Eleventh Circuit recently noted in dicta that *Bell* does not apply to claims of denial of counsel at trial. *See Hunter v. Moore*, 304 F.3d 1066, 1070 n.4 (11th Cir. 2002). *Accord United States ex rel. Madej v. Schomig*, 223 F. Supp.2d 968, 971-72 n.2 (N.D. Ill. 2002) ("*Bell v. Cone* does not appear to alter the conditions for presuming prejudice under *Cronic* when a defendant is actually denied counsel at a critical stage of the proceedings or when the circumstances of the trial render effective assistance impossible.")

the trial judge's supplemental jury instruction. Because French was without counsel during a critical stage of his trial, the district court correctly granted French's petition for a writ of habeas corpus. For the foregoing reasons, we AFFIRM the judgment of the Eastern District of Michigan.