*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0421P (6th Cir.)
File Name: 03a0421p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DAVID HUDSON,
  *Petitioner-Appellee,*

  *v.*                              No. 02-1586

KURT JONES,
  *Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-71756—Avern Cohn, Senior District Judge.

Argued: September 10, 2003

Decided and Filed: December 3, 2003

Before: MOORE and GILMAN, Circuit Judges; MILLS,
District Judge.[*]

———————————

### COUNSEL

**ARGUED:** Laura Graves Moody, OFFICE OF THE
ATTORNEY GENERAL, HABEAS CORPUS DIVISION,

———————————

[*] The Honorable Richard Mills, United States District Judge for the
Central District of Illinois, sitting by designation.

Lansing, Michigan, for Appellant. Kevin M. Schad, SCHAD
& COOK, Indian Springs, Ohio, for Appellee. **ON BRIEF:**
Laura Graves Moody, OFFICE OF THE ATTORNEY
GENERAL, HABEAS CORPUS DIVISION, Lansing,
Michigan, for Appellant. Jeanice Dagher-Margosian, Ann
Arbor, Michigan, for Appellee.

GILMAN, J., delivered the opinion of the court, in which
MILLS, D. J., joined. MOORE, J. (pp. 11-17), delivered a
separate dissenting opinion.

———————————

### OPINION

———————————

RONALD LEE GILMAN, Circuit Judge. Imprisoned as
the result of a 1985 state-court conviction for murder and for
being a felon in possession of a firearm, David Hudson
petitioned the district court for a writ of habeas corpus. He
contended, among other claims, that he had been denied the
effective assistance of counsel at trial because his lawyer had
been physically absent from court when the judge, at the
request of the deliberating jury, reread selected portions of the
instructions as to certain elements of the crimes charged. The
district court granted Hudson a conditional writ of habeas
corpus on the basis of this claim. For the reasons set forth
below, we **REVERSE** the judgment of the district court.

### I. BACKGROUND

#### A. Factual background

In April of 1985, Hudson stood trial in a Michigan state
court for the murder of Ruth Wilson and for being a felon in
possession of a firearm. His attorney was Stuart Young.
After instructing the jury at the close of the proof, the trial
court sent the jurors to lunch. The following colloquy then
took place between the court and counsel:

THE COURT: Before we bring the jury out, gentlemen, Mr. Young is going to be in Judge Gage's courtroom in the Oakland County Circuit Court. The juries often have a habit of asking for different things. I've talked to Mr. Young, Mr. Janice [the prosecutor] about this. Unless the request to be reinstructed is extraordinary for some reason, if the jury asks to be reinstructed, I'm going to go forward and reinstruct them. Mr. Young, any comment about that?

MR. YOUNG: No, your Honor. I have no objection.

THE COURT: As I indicated to Mr. Young, if the jury wants testimony read back, it is my general practice to try to find out exactly the area of concern to try to minimize that. Perhaps that kind of thing can be taken care of over the phone. And if a verdict is reached, we'll just wait for Mr. Young to get back.

MR. YOUNG: Thank you, your Honor. I'll be in Judge Gage's. And I will check back with this Court so that I'm in constant touch. If I can get back here right away, I will.

Approximately three hours later, the jury sent the following note to the judge: "We need the definition of aiding and abetting and the difference between second and first degree murder." The jury was then brought into the courtroom. Hudson, Young, and the prosecutor were all absent. The judge proceeded to reread to the jury the instructions that had previously been given concerning the elements of (1) first and second degree murder, and (2) aiding and abetting.

In the initial instructions (before the jury began to deliberate), the judge had given a short definition of aiding and abetting when he instructed the jurors on the elements of murder. He had given a more complete instruction on aiding and abetting in conjunction with the charge of possessing a firearm while a felon. During the "reinstruction," the judge

used the second, fuller instruction on aiding and abetting. No other discussion took place and no additional or supplemental instructions were given. The jury then resumed its deliberations. One day later, Hudson was found guilty of first-degree murder and of being a felon in possession of a firearm.

## B.  Procedural background

Still represented by Young, Hudson filed a direct appeal. The Michigan Court of Appeals affirmed his conviction in September of 1986, and the Michigan Supreme Court denied leave to appeal in January of 1987.

In October of 1995, Hudson returned to the state trial court and filed a motion for relief from judgment pursuant to Rule 6.500 of the Michigan Court Rules. That motion was denied in January of 1996, and Hudson applied for leave to appeal. The Michigan Court of Appeals denied his application, and the Michigan Supreme Court did the same. Hudson then timely filed his federal habeas corpus petition in April of 1998.

The magistrate judge recommended that the petition be denied in its entirety. This recommendation was adopted by the district court as to all of Hudson's claims except his contention that he had received the ineffective assistance of counsel when the jury was reinstructed in Young's absence. After supplemental briefing, the district court granted Hudson a conditional writ of habeas corpus on the basis of this claim. It reasoned that Hudson's counsel was absent at a critical stage of the proceedings, so that prejudice should be presumed pursuant to *United States v. Cronic*, 466 U.S. 648 (1984). The state filed a motion for reconsideration, which was denied. This timely appeal followed.

## II.  ANALYSIS

Two issues are raised on appeal by the state.  One is whether Hudson is barred from pursuing his underlying constitutional claim because he failed to raise that claim in the state-court proceedings.  The other is whether, on the merits, Hudson's ineffective-assistance claim entitles him to habeas relief.

### A.  Standard of review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (codified principally at 28 U.S.C. § 2254(d)), provides the standard of review that federal courts must apply to state-court determinations when reviewing petitions for a writ of habeas corpus.  Because, however, the state courts never addressed Hudson's *Cronic* claim, the AEDPA standard of review is inapplicable on this issue.

Regarding the standard of review for district-court determinations, we review de novo the district court's legal conclusions and apply the "clearly erroneous" standard to its findings of fact.  *Lott v. Coyle*, 261 F.3d 594, 606 (6th. Cir. 2001).  An ineffective-assistance claim is a mixed question of law and fact, and procedural default is a question of law, so both issues are subject to de novo review.  *Id.*

### B.  Procedural default

The state argued in the district court that Hudson had procedurally defaulted his *Cronic* claim because (1) the claim had not been presented to the state courts, and (2) no state-court remedy remained because Rule 6.502 of the Michigan Court Rules prohibits successive petitions for relief from judgment.  Although the district court agreed that the *Cronic* claim was procedurally defaulted, it held that Hudson had established "cause and prejudice" to excuse the default.  *See Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where

a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'") (internal citations omitted).

The district court concluded that both of Hudson's state post-trial counsel were ineffective for failing to raise the *Cronic* claim, and that their ineffective assistance constituted cause to excuse the procedural default.  In contrast, the state argues that the procedural default of the *Cronic* claim took place when Hudson failed to present it on collateral review, and that, because there is no constitutional right to the assistance of counsel in collateral proceedings, ineffective assistance of counsel during state collateral review does not constitute cause as a matter of law.

Analyzing the issue of procedural default requires an interpretation of Michigan state law, specifically Rule 6.508(D)(3) of the Michigan Court Rules, which allows claims to be raised for the first time in state postconviction proceedings if the petitioner can demonstrate both "good cause" for the failure to raise those claims previously and "actual prejudice from the alleged irregularities."  Applying Rule 6.508(D)(3) in this case is especially complex because the Rule's effective date in 1989 was long after Hudson's 1985 conviction and the completion of his direct appeals by 1987.

The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.");  *see also Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted);  *cf.* 28 U.S.C.

§ 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). In the present case, the question of procedural default presents a complicated question of Michigan law and is unnecessary to our disposition of the case. We will therefore proceed directly to the merits of Hudson's *Cronic* claim.

## C.  Merits of the *Cronic* claim

The Sixth Amendment to the United States Constitution guarantees the effective assistance of trial counsel for criminal defendants. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Generally, to establish constitutionally ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell "below an objective standard of reasonableness," *id.* at 688, and "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A criminal conviction must be set aside, however, even without the showing of any actual prejudice, "if the accused is denied counsel at a critical stage of his trial." *United States v. Cronic*, 466 U.S. 648, 659 (1984) (discussing the situations where prejudice should be presumed). Thus, the Supreme Court "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused[,] during a critical stage of the proceeding." *Id.* at 659 n.25. Hudson has not demonstrated, nor even contended, that actual prejudice resulted from his attorney's absence when the trial judge responded to the jury's note. The question on the merits, therefore, is whether Hudson's counsel was absent during a critical stage of the proceedings, so that prejudice should be presumed under *Cronic*.

This court's opinion in *United States v. Harris*, 9 F.3d 493 (6th Cir. 1993), is relevant to the issue before us. In *Harris*,

the court examined the propriety of a situation in which the jury, at the start of its second day of deliberations, sent a note to the judge that read: "The jury is having a problem with the definition of entrapment could we have a copy of the instructions that were read to us concerning entrapment May we also have a flip chart and some markers Thank you." *Id.* at 499 (lack of punctuation in original). "Without contacting the parties, the court responded by providing the jury with a complete written set of all of the jury instructions read by the court." *Id.*

The *Harris* court decided that, although the district judge's actions technically violated Rule 43 of the Federal Rules of Criminal Procedure (dealing with when the defendant must be present), reversal of the conviction was not warranted because "Defendant is unable to state a reasonable possibility of prejudice that resulted from the district court's conduct." *Id.* Implicit in this holding is the conclusion that trial counsel's absence was not during a critical stage of the proceedings because, had the absence occurred during a critical stage, prejudice would have been presumed under *Cronic*.

We respectfully disagree with the dissent's suggestion that our reliance on *Harris* involves "an impermissible logical leap." Dis. Op. at 17. Although the court in *Harris* based its decision on Rule 43 rather than the Sixth Amendment, the opinion explicitly recognized that the defendant's counsel was not present when the trial court reinstructed the jury. *See Harris*, 9 F.3d at 495-96 (stating the issue as "whether prejudicial error occurred when the district court responded to a note from the jury *without notifying counsel*") (emphasis added). Because the *Harris* court was aware of trial counsel's absence, a reasonable inference can be drawn that the court's exclusive focus on Rule 43 is an indication that the Rule 43 argument was perceived to be stronger than the *Cronic* argument. So although *Harris* is not controlling, it supports the conclusion that the rereading of identical jury instructions is not a critical stage of a criminal trial.

Similarly, the Seventh Circuit has held that "the court's *reading* of the jury instructions (as opposed, perhaps[,] to a court's jury instruction conference with counsel) [is not] a critical stage of the proceedings." *United States v. Morrison*, 946 F.2d 484, 503 (7th Cir. 1991) (emphasis in original). The *Morrison* court therefore decided that *Cronic* was inapplicable where the trial judge instructed the jury at the close of evidence in the absence of defense counsel. *Id.* *Morrison* supports the proposition that reading instructions to the jury is not a critical stage of the proceedings if trial counsel has previously agreed to the instructions.

On the other hand, in *French v. Jones*, 332 F.3d 430 (6th Cir. 2003), this court held that *Cronic*'s presumption of prejudice applied where trial counsel was absent when the state trial judge gave a supplemental instruction to a thrice-deadlocked jury and "the third instruction was not the standard deadlocked jury instruction." *Id.* at 434, 438. *French*, however, is distinguishable from the instant case because the supplemental instructions given in *French* had not been articulated by the trial court before the jury began deliberating. In contrast, in the present case, the instructions given by the judge in Young's absence had been given verbatim in Young's presence during the initial charge. The only difference is that, during the initial charge, other instructions were interspersed between the murder instruction and the full aiding-and-abetting instruction. We find this difference immaterial.

Several cases from other circuits appear to track this new-versus-repeated distinction. In *Curtis v. Duval*, 124 F.3d 1, 4 (1st Cir. 1997), for example, the First Circuit stated in dicta that "recalling the jury for supplementary instructions after deliberations are underway is a critical stage of a criminal trial." But the supplementary instructions in *Curtis* were new, not a repeat of earlier instructions given when counsel was present. In a later, unpublished decision, the First Circuit held that "the prejudice per se doctrine does not apply" where supplemental instructions were given, without notifying

counsel, in response to a note from the deliberating jury, but "the supplemental instructions were similar to portions of the charge, given earlier, that counsel had reviewed without objections." *Gonzalez-Gonzalez v. United States*, No. 02-1243, 2002 WL 31416029, at * 2 (1st Cir. Oct. 29, 2002).

The Third Circuit has similarly rejected the application of *Cronic* in a situation where, upon a request from the deliberating jury, the trial judge provided the transcript of certain testimony without notifying counsel. *United States v. Toliver*, 330 F.3d 607 (3d Cir. 2003). "Clarifying the substantive elements of the charged offense (*Curtis*) or instructing a deadlocked jury (*French*) affirmatively guides jurors as to how they should fulfill their decisionmaking function. But submitting verbatim specifically excerpted record testimony that the jury itself had requested does not similarly 'instruct' the jury." *Id.* at 614.

We are of the opinion that the factual situation in the present case is closer to *Harris*, *Gonzalez-Gonzalez*, *Morrison*, and *Toliver* than to *French* and *Curtis*. Because the trial judge here simply repeated, at the jury's request, specific instructions that had previously been given in the presence of Hudson's counsel, we conclude that their repetition should not be deemed a "critical stage in the proceedings." Prejudice to Hudson will therefore not be presumed under *Cronic*, and no actual prejudice has been shown. The district court thus erred in deciding that Hudson was entitled to habeas relief on the basis of his *Cronic* claim.

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** with instructions to dismiss Hudson's petition for a writ of habeas corpus.

—————————

**DISSENT**

—————————

KAREN NELSON MOORE, Circuit Judge, dissenting. A little more than seventy years ago Justice Sutherland eloquently described the irreducible right to counsel in a passage that time has only made more poignant:

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.

*Powell v. Alabama*, 287 U.S. 45, 68-69 (1932). I respectfully dissent from the majority opinion because I believe that the absence of counsel during as critical a stage of the trial as jury instruction or jury reinstruction presumptively prejudices the

defendant by sharply undermining the reliability of the resulting trial. As enunciated in the recently decided *French v. Jones,* 332 F.3d 430 (6th Cir. 2003), jury instruction is a critical stage of a criminal proceeding, and jury reinstruction is no less so, because both events materially shape the jurors' understanding of the law that they must apply to determine the defendant's guilt. The absence of counsel, even when the previously issued instructions are reread verbatim, impinges the validity of the trial because the defendant, rarely knowledgeable in the technical interstices of basic law, let alone the tangle of jury instruction, cannot respond without the help of counsel to whatever confusion, problem, or ambiguity sparks the jury to return to the court for advice.

Initially, I agree with the majority's decision to reach the merits of Hudson's claim raised pursuant to *United States v. Cronic*, 466 U.S. 648 (1984), although I would employ different reasoning, because I believe that Hudson did not procedurally default his *Cronic* claim, and even if he did, he had cause and prejudice to overcome any procedural default. First, there was no procedural default, because the reason asserted by the Michigan Court of Appeals and the Michigan Supreme Court for the default — the failure to comply with MCR 6.508(D)(3) — does not apply to direct appeals concluded before MCR 6.508(D)(3)'s effective date of October 1, 1989. MCR 6.508(D)(3) is not an adequate and independent state ground that forecloses federal review of Hudson's *Cronic* claim because it was not effective either when Hudson filed or even when he completed his direct review. *See Gonzales v. Elo*, 233 F.3d 348, 353-54 (6th Cir. 2000) (holding that MCR 6.508(D) cannot "serve as an adequate and independent state ground for the prisoner's procedural default" when the prisoner "brought his direct appeal prior to the rule's effective date of October 1, 1989"). Aside from the inapplicability of MCR 6.508(D)(3), Hudson also did not procedurally default his *Cronic* claim because he raised the claim before the Michigan Court of Appeals and the Michigan Supreme Court on direct appeal. Second, even if Hudson did procedurally default his claim, cause and

prejudice existed to excuse the default because Hudson's direct appeal attorney — the same attorney whose absence during jury reinstruction gives rise to Hudson's *Cronic* claim — was constitutionally ineffective in failing to raise on appeal his absence during a critical stage of the trial.

Turning to the majority's discussion of the merits, I find myself unable to concur with its result or its reasoning, because the unexcused absence of defense attorney Young during the jury reinstruction deprives Hudson of his constitutional right to counsel during a critical stage of his trial. It is presumed that Young's constitutionally deficient representation would prejudice Hudson if Young "was either totally absent, or prevented from assisting [Hudson] during a critical stage of the proceeding." *Cronic*, 466 U.S. at 659 n.25 (1984). There is no doubt that Young was absent during the jury reinstruction, so the central inquiry is whether jury reinstruction constitutes a critical stage of a proceeding.

The instruction of the jury is a critical stage of a trial no matter whether the judge is reading the jury instruction for the first time, supplementing the original instructions with new instructions, or repeating the initial instructions. The result reached by the majority opinion is not mandated by precedent, and it threatens to undermine defendants' Sixth Amendment rights. We recently held in *French v. Jones*, 332 F.3d 430 (6th Cir. 2003), that prejudice was presumed when a state trial judge gave a supplemental instruction to a deadlocked jury in the absence of trial counsel. *Id.* at 438. Nothing in the opinion limited that holding to situations in which the judge imparts new information to the jury. Quite the opposite, we concluded that *Cronic* applied because, "French's attorneys *did not have an opportunity to respond to the jury's note* nor were they present when the trial judge gave the supplemental instruction. The uncertainty of the prejudice French suffered because he was not represented by counsel during this critical stage of his trial makes the outcome of his trial unreliable." *Id.* (emphasis added). Thus, what drives the unreliability of jury reinstruction in the absence of counsel is

not only counsel's inability to prevent the dissemination of erroneous new instructions, but also counsel's incapacity to respond to whatever motivated the jury to return to the court with some confusion or misunderstanding and to contribute to the resolution of that problem.

While the literal re-reading of the initial jury instruction may appear to be harmless in the sense that it imparts no new information to the jury, the jury's desire for reinstruction or supplemental instruction is far from inconsequential. A jury asks for additional instructions or desires to hear the original instructions again because its members are confused, uncertain, internally quarreling, or because they failed to understand the instructions the first time, possibly because of an error or problem with the original instructions. When the jury returns to the court without a verdict, counsel, if present, can assess whether a reinstruction is appropriate or whether supplemental instructions or clarifications are needed. Just as delivering a faulty supplemental instruction to the jury can prejudice the defendant's trial, the *failure* to impart to the jury a clarifying instruction because of a problem with the initial instruction can be equally damaging. Additionally, counsel's presence is needed to protect the defendant's rights should the trial court reinstruct the jury with the original instructions after one party has complained that the original instructions were defective. Here, Hudson's jury sent the trial judge a note, which read: "We need the definition of aiding and abetting and the difference between second and first degree murder." Joint Appendix at 594 (Trial Tr.). Defense attorney Young, who absented himself from the courtroom without Hudson's permission, was not available to assess precisely the extent of the jury's problems with the definition of aiding and abetting or their difficulty with the distinction between second and first degree murder. His absence made it impossible to challenge the trial court's decision to reinstruct the jury with almost the exact same language it had originally used.

The majority relies heavily on our 1993 opinion in *United States v. Harris*, 9 F.3d 493 (6th Cir. 1993), for the proposition that reinstructing a jury is not a critical stage of the trial. However, *Harris* is not controlling, because while the factual circumstances underlying *Harris* are similar to those present here, *Harris* does not even discuss the Sixth Amendment right to counsel, let alone the rule of presumed prejudice enunciated in *Cronic*. In *Harris*, the jury sent the court a note asking to have a written copy of the jury instructions, a request the court granted without contacting either of the parties. *Id.* at 499. The defendant asserted that the district court erred by not giving him the opportunity to respond to the note on the basis of Rule 43 of the Federal Rules of Criminal Procedure, which provides that the "defendant must be present at . . . every trial stage" except when "the proceeding involves only a conference or hearing on a question of law." Fed. R. Crim. P. 43(a)(2), (b)(3). We held that while a technical error may have existed, the defendant was "unable to state a reasonable possibility of prejudice that resulted from the district court's conduct." *Harris*, 9 F.3d at 499. At no point did Harris raise an ineffective assistance of counsel claim based upon his attorney's absence during the reinstruction.

*Harris* is inapplicable here. Facially, *Harris*'s interpretation of Rule 43 does not control this case because Rule 43 only governs the presence of the *defendant* during trial and does not pertain to the defendant's right to have *counsel* present. Additionally, whereas Sixth Amendment jurisprudence has divided the trial into critical and noncritical stages, Rule 43 requires the presence of the defendant at all stages of the trial, which makes a showing of prejudice even more imperative given that a Rule 43 error can be asserted because of a defendant's absence at a relatively unimportant portion of the trial.

Most significantly, *Harris* does not discuss the Sixth Amendment, the *Cronic* rule of presumed prejudice, or the standard for ineffective assistance of counsel fashioned in

*Strickland v. Washington*, 466 U.S. 668 (1984), which requires a showing of prejudice in situations such as when counsel is absent during a noncritical portion of a criminal proceeding. Given that *Harris* concerns an entirely different area of criminal law, which does not distinguish between noncritical and critical stages, and that the defendant in *Harris* did not even raise a Sixth Amendment claim, it is an impermissible logical leap to say that implicit in the holding of *Harris* "is the conclusion that trial counsel's absence was not during a critical stage of the proceedings because, had the absence occurred during a critical stage, prejudice would have been presumed under *Cronic*." Maj. Op. at 8.

Several of the cases from other circuits to which the majority cites do not command its result. In *United States v. Morrison*, 946 F.2d 484 (7th Cir. 1991), the Seventh Circuit ruled that "the court's *reading* of the jury instructions (as opposed, perhaps to a court's jury instruction conference with counsel)" did not constitute a critical stage. *Id.* at 503. However, this holding presupposes that counsel was present to agree or to object to the precise phrasing of the instructions before they were read. The court's conclusion also rests on the belief that it is unlikely that the district court will commit an error in the actual recitation of the instructions to which the parties have already agreed such that counsel needs to be present to monitor for such an occurrence. The Seventh Circuit's conclusion implies that the jury instruction conference is a critical stage, and defense attorney Young's absence during the jury's return for further instruction precluded the occurrence of any such conference, thus denying Hudson the opportunity even to assess whether an additional instruction conference was needed. In *Curtis v. Duval*, 124 F.3d 1 (1st Cir. 1997), the First Circuit clearly stated that "recalling the jury for supplementary instructions after deliberations are underway is a critical stage of a criminal trial" and "giving a sua sponte jury instruction without consulting, and in the absence of, the defendant's attorney . . . denies the defendant the assistance of counsel at that critical stage" but did not draw any distinction between

supplementary instructions and re-reading old instructions. *Id.* at 4-5.   The First Circuit ultimately rejected the defendant's *Cronic* claim, but only on the ground that the defendant's case became final before Court's decision in *Cronic.  Id.* at 5 (citing *Teague v. Lane*, 489 U.S. 288, 310 (1989)).    The First Circuit's unpublished decision in *Gonzalez-Gonzalez v. United States* did reach the conclusion that *Cronic* does not apply when the court gave the jury supplemental instructions in the absence of defendant's counsel, but its analysis of whether supplemental instructions constitute a critical stage is sparse at best, relying mostly on the self-fulfilling proposition that "prejudice per se is hen's-teeth rare."   *Gonzalez-Gonzalez*, No. 02-1243, 2002 WL 31416029, at *2 (1st Cir. Oct. 29, 2002).  Finally, the Third Circuit's decision in *United States v. Toliver*, 330 F.3d 607 (3d Cir. 2003), stands only for the proposition that submitting *testimony* to the jury in response to a request does not constitute a jury instruction, but the case does not provide any guidance regarding whether absence of counsel during an actual instruction (using either new or previously read instructions) constitutes deprivation of counsel at a critical stage.  *Id.* at 614.

Therefore, I would hold that jury reinstruction is a critical stage of a criminal proceeding and the absence of counsel from that proceeding constitutes a presumptively prejudicial violation of the Sixth Amendment.  The judgment of the district court granting a conditional writ of habeas corpus should be affirmed.  I respectfully dissent.