# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

           Plaintiff-Appellee,

v

ULISES CORRALES VEGA,

           Defendant-Appellant.

UNPUBLISHED
October 17, 2017

No. 333143
Ingham Circuit Court
LC No. 15-000609-FC

---

Before: BOONSTRA, P.J., and METER and GADOLA, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of second-degree murder, MCL 750.317, and carrying a dangerous weapon with unlawful intent, MCL 750.226. The trial court sentenced defendant to concurrent prison terms of 300 to 600 months for the second-degree murder conviction and 23 to 60 months for the carrying a dangerous weapon with unlawful intent conviction. Defendant appeals by right. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from the June 12, 2015 fatal stabbing of Phineas Oliver. Defendant and his neighbor, William McConnel, had been drinking alcohol and barbequing throughout the afternoon of June 11 before retiring to their respective apartments. Later that night, they returned to their shared porch and resumed drinking. At some point, Oliver and a companion approached defendant and McConnel; it appears that all four men knew each other. At Oliver's request, McConnel retrieved a bottle of whisky from his apartment. Oliver took the bottle, "hit the bottom of it," and asked McConnel if he would help him "knock the devil out of the bottle." McConnel acquiesced by "smack[ing]" the bottle. Oliver extended the bottle to defendant for the same purpose. When defendant "slapped the bottle," it fell from Oliver's hand and "cracked" when it landed on the porch. McConnel testified that Oliver asked defendant, "why did you do that, why did you spill Bill's whiskey[?]"

Defendant testified that he decided that it was time for Oliver and his companion to leave. Defendant retrieved a "sword" from his living room with the intention of "trying to confirm [with Oliver]: Go home." Defendant said that he only intended to "pinch" Oliver with the sword and was "very surprised" when "everything went in." McConnel testified that he observed defendant holding the sword with one hand on the handle and one hand on the blade and that

-1-

"the sword thrust into [Oliver's] chest" and was "held there" by defendant before being "yanked out." McConnel said that defendant looked shocked and told him to call 911. The medical examiner testified that Oliver died of a stab wound to the chest that was approximately seven inches deep.

Defendant initially told police that he had found Oliver lying in the street. Defendant also initially denied that a sword was involved in the stabbing and denied that there was any blood in his apartment. Police followed a "blood trail" from Oliver to defendant's apartment where they found what was described as a "2-foot long Samurai sword" with what appeared to be blood on its tip. Police also discovered what appeared to be blood in defendant's bathroom sink. Defendant eventually admitted to having stabbed Oliver but claimed that the stabbing was accidental. Oliver's DNA was found on the sword blade and handle, while defendant's DNA was found on the sword's handle.

Defense counsel requested jury instructions on voluntary and involuntary manslaughter. The trial court found that neither instruction was supported by the evidence. The jury was instructed, with regard to defendant's specific intent to kill Oliver, that it was not a defense that defendant was intoxicated by alcohol or drugs that he had voluntarily and knowingly consumed.

The jury was excused to begin deliberations on January 25, 2016. The trial court convened the next day at 1:31 p.m., after the jury verdict had been reached but before the verdict was announced on the record. The trial court stated on the record that at "9:30" the jury had requested " '[a]ctual testimony of Mr. Vega and neighbor Bill' ." The trial court stated that the court reporter "start[ed] to compile that testimony" and that "the testimony of Mr. McConnel was completed" "about 12, 12:30 . . ." at which point the transcript was given to the jury. The trial court said that "work was [then] started on [defendant's] testimony" but that

> [d]uring the interim . . . at 11:33, the jury requested what they referred to as a transcript of the 9-1-1 call. And we gave them the actual call. That was played in the jury room, I assume. But they got that information.

> And when the first transcript was completed, Mr. McConnel, we gave that to the jury while waiting for the completion of [defendant's] [t]ranscript. And it appears that the jury reached their verdict prior to receiving Mr. Vega's transcript.

Defense counsel moved for a mistrial, arguing that McConnel's testimony was over-emphasized because the jury had received only the transcript of his testimony (and not that of defendant) before rendering its verdict. Defense counsel noted that "[i]f I would have had the opportunity to have input in the process by which we give these transcripts, which I didn't, I would have told the Court to give both transcripts at the same time." "By not giving [defendant's] transcript at all," counsel argued, "it seems unfair and prejudicial."

The trial court, acting on the assumption that the as-yet-unknown jury verdict was for a conviction, denied defendant's motion for a mistrial, noting that "[t]he Jury can make their decision at any time." The court said that "historically, we have always given the transcripts to the jury as they're completed" and that "time is a factor here, judicial economy is a factor here." After an off-the-record discussion, defense counsel noted that the jury's written requests showed

that "[t]hey first wanted to see [defendant's] transcript." The court explained that the transcripts "were prepared in the order that they testified. So that's why Mr. McConnel was first." The court also reasoned that "[o]nce they've reached the standard of beyond a reasonable doubt, I don't see how there is any undue prejudice."

This appeal followed.

## II. JURY INSTRUCTIONS

Defendant argues that the trial court erred by not giving an involuntary manslaughter instruction to the jury. We disagree. "[A] trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (internal quotation marks and citation omitted). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013).

"[W]hen a jury instruction is requested on any theories or defenses and is supported by evidence, it must be given to the jury by the trial judge." *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995). "[A]n instruction on a lesser offense is proper where all the elements of the lesser offense are included in the greater offense, and a rational view of the evidence would support such an instruction." *People v Nickens*, 470 Mich 622, 626; 685 NW2d 657 (2004). "[B]oth forms of manslaughter are necessarily included lesser offenses of murder. . . . Consequently, when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003).

The distinguishing element between murder and manslaughter is malice. *People v Holtschlag*, 471 Mich 1, 21; 684 NW2d 730 (2004). "If the homicide was committed with malice, it is murder. If it was committed with a lesser mens rea of gross negligence or an intent to injure, and not malice, it is not murder, but only involuntary manslaughter." *Id*. at 21-22. "Malice is defined as an act done with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *People v Gillis*, 474 Mich 105, 138; 712 NW2d 419 (2006) (internal quotation marks and citation omitted). Therefore, defendant was entitled to an involuntary manslaughter instruction only if a rational view of the evidence would have supported a finding that Oliver's death was "caused by an act of 'gross negligence or an intent to injure, and not malice . . . .' " *Id*., quoting *Holtschlag*, 471 Mich at 21-22.

Defendant argues that his testimony that he did not intend to stab Oliver, but merely to "pinch" him, and that it was an "accident," was evidence of gross negligence supporting an involuntary manslaughter instruction. Defendant, who admitted that he was intoxicated to the point that "[m]aybe" he could not "drive a car," retrieved a sword from his apartment following an altercation with Oliver, and stated that his intended purpose was to induce Oliver to leave. McConnel testified that "the sword [was] thrust into [Oliver's] chest" and "held there" before being "yanked out." McConnel answered affirmatively when asked if the thrusting motion made by defendant was "forceful" and "powerful." McConnel's testimony that defendant forcefully stabbed Oliver was confirmed by the medical examiner who testified that the stab wound to

-3-

Oliver's chest was approximately seven inches deep. A rational view of the evidence compels the conclusion that defendant purposefully, rather than negligently, stabbed Oliver in the chest.

Further, defendant agreed that the sword admitted into evidence is a "dangerous weapon" "[c]apable of killing someone." Because the evidence shows that defendant, while intoxicated, forcefully stabbed Oliver in the chest with what he concedes was a weapon capable of causing death, no rational jury could find that defendant did not act with malice, i.e. "acts that create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Gillis*, 474 Mich at 139 (internal quotation marks and citation omitted). The trial court did not abuse its discretion in deciding that defendant was not entitled to an involuntary manslaughter instruction. *Musser*, 494 Mich at 348.

Defendant further argues that the trial court erred by not giving an instruction on the defense of accident. Defendant did not request that instruction and he expressed satisfaction with the instructions given to the jury. Accordingly, he has waived this argument. *People v Kowalski*, 489 Mich 488, 504-505; 802 NW2d 200 (2011). In any event, defendant fails to explain how this instruction would have led to a different outcome. See *People v Houthoofd*, 487 Mich 568, 590; 790 NW2d 315 (2010). Because the evidence showed that defendant purposefully stabbed Oliver, the lack of an accident instruction did not result "in a miscarriage of justice." MCL 769.26.

Defendant also argues that the trial court erred by not giving M Crim JI 6.2, titled "Intoxication As a Defense to a Specific Intent Crime," in its entirety. This argument is also waived because defendant expressed satisfaction with the instructions read to the jury. *Kowalski*, 489 Mich at 504-505. Regardless, the trial court did not err by omitting the second paragraph of that instruction, which provides as follows:

> (2)The defendant is not guilty of [state charge] if the defendant proves by a preponderance of the evidence that [he / she] lacked the intent to [*state required specific intent*] because [he / she] voluntarily consumed a legally obtained and properly used medication or other substance and did not know and reasonably should not have known that [he / she] would become intoxicated or impaired as a result. [M Crim JI 6.2.]

A trial court is only required to read the "[p]ertinent portions" of a model jury instruction. MCR 2.512(D)(2). In this case, there was no evidence presented at trial to show that defendant did not know and reasonably should not have known that he would become intoxicated or impaired by consuming alcohol or any other substance. Therefore, paragraph (2) was not applicable to this case and the trial court did not err by omitting it from the jury instructions. Viewing the jury instructions as a whole, "they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Kurr*, 253 Mich App at 327. Reversal is not required. *Id.*

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective in several respects. We disagree. Defendant moved this Court to remand for a new trial or a *Ginther*[1] hearing, which this Court denied.[2] Our review is therefore limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." See *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). "There is a presumption that counsel was effective, and a defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). In order to demonstrate prejudice, "the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." See *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001).

Defendant first argues that his trial counsel was ineffective for failing to request an instruction on the defense of accident. As discussed, a rational juror could not have concluded that defendant accidentally stabbed Oliver. Even assuming that defendant's testimony that the stabbing was an accident would have supported the instruction, "[f]ailing to request a particular jury instruction can be a matter of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013). Defense counsel effectively conceded during closing argument that defendant intentionally stabbed Oliver but maintained that he did not have the requisite intent to be convicted of either first or second-degree murder. While a defendant can maintain inconsistent defenses, see *People v Guajardo*, 300 Mich App 26, 43; 832 NW2d 409 (2013), defense counsel could have reasonably concluded that a defense of accident would not have been persuasive to the jury and would merely have diluted his chosen defense or made defendant's arguments less credible. Defense counsel's strategy was successful to the extent that defendant was not convicted of first-degree murder. Given "the strong presumption" that a defense counsel's choices were "sound trial strategy," *Cooper*, 309 Mich App at 80, defendant has not demonstrated that his counsel was ineffective for not pursuing a defense of accident.

Defendant also argues that defense counsel erred by not objecting to the deletion of part of M Crim JI 6.2 to the jury. As discussed, the trial court did not err by only reading the "[p]ertinent portions" of the model instruction. MCR 2.512(D)(2). "A defendant is not denied the effective assistance of counsel by counsel's failure to make a futile or meritless objection." *People v Johnson*, 315 Mich App 163, 175; 889 NW2d 513 (2016).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Vega*, unpublished order of the Court of Appeals, entered March 17, 2017 (Docket No. 333143).

Defendant also argues via a Standard 4 brief[3] that defense counsel was ineffective for failing to investigate the evidence supporting his testimony that the prosecution did not have the correct murder weapon. A sword recovered from defendant's bedroom was admitted into evidence as the murder weapon. McConnel testified that he observed defendant stab Oliver with that sword. Indeed, Oliver's DNA was found on the sword's blade and handle. The medical examiner opined that Oliver's wound was consistent with the blade of the sword. Despite the substantial evidence showing that the sword was the murder weapon, defendant testified that he used a different sword, a "double edged" sword, to stab Oliver. But even if defendant's counsel failed to investigate and look for evidence to support defendant's testimony, defendant has not shown that such a failure was objectively unreasonable. The identity of the murder weapon was of marginal relevance given that defendant admitted to being the cause of Oliver's death. Defendant argues that evidence pertaining to the double-edged sword could have improved his credibility with the jury. Considering the evidence showing that defendant purposefully stabbed Oliver, we conclude that there is not a reasonable probability that evidence relating to the other sword would have led to a different outcome. *Carbin*, 463 Mich at 599-600.

## IV. RIGHT TO COUNSEL

Finally, defendant argues that he was denied his constitutional right to the assistance of counsel. As stated, during jury deliberations, the jury requested the "[a]ctual testimony of Mr. Vega and neighbor Bill." Without notifying defense counsel or the prosecutor, the trial court had the court reporter prepare a transcript of McConnel's testimony and gave that transcript to the jury upon its completion. The court reporter then began compiling a transcript of defendant's testimony, but the jury reached its verdict before that transcript was completed. Defense counsel objected to the procedure employed by the trial court and to not being made aware of the jury's request. The trial court overruled the objection. We review constitutional issues de novo. *People v Powell*, 303 Mich App 271, 274; 842 NW2d 538 (2013).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." US Const, Am VI. "The Sixth Amendment safeguards the right to counsel at all critical stages of the criminal process for an accused who faces incarceration." *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004). "The complete denial of counsel at a critical stage of a criminal proceeding is a structural error that renders the result unreliable, thus requiring automatic reversal." *People v Russel*, 471 Mich 182, 194 n 29; 684 NW2d 745 (2004); see also *United States v Cronic*, 466 US 648, 659 n 25; 104 S Ct 2039; 80 L Ed 2d 657 (1984).

Defendant "asserts that he was denied counsel at a critical stage" when the trial court decided how it would provide the requested testimonies to the jury "without any input" from defense counsel, and that he therefore is not required to demonstrate prejudice. We disagree. A trial court's ex parte communications with the jury must be categorized as "substantive, administrative, or housekeeping" before determining whether such a communication was a critical stage of the proceeding. *People v France*, 436 Mich 138, 163; 461 NW2d 138 (1990);

---

[3] A brief filed in propria persona by a defendant pursuant to Administrative Order 2004-6.

see also *Hudson v Jones*, 351 F3d 212, 216-218 (CA 6, 2003). Communications concerning the availability of evidence are administrative in nature and are not a critical phase of the proceedings that carries the presumption of prejudice. *France*, 436 Mich at 143-144. We conclude that to the extent the trial court engaged in a communication with the jury by providing, in response to its notes, the transcripts as they became available, the communication was administrative in nature and did not implicate the concerns raised in *Cronic*.[4] See *France*, 436 Mich at 165 (finding communications by a bailiff with the jury as the result of the trial court's grant of the jury's requests to review evidence, as well as those that resulted from the trial court's refusal of the jury's requests to review evidence, "come within the category of administrative communication."); see also *Peoples v Lafler*, 734 F 3d 503 (CA 6, 2013).

Further, the record reveals that defense counsel was given an opportunity to object to the jury's receipt of McConnel's testimony before defendant's testimony became available, to move for a mistrial, and to preserve a record for appellate review. We are therefore not convinced that, even if we were to find the challenged portion of the proceedings to be a critical phase of the proceedings, defendant could be said to have suffered "the complete denial of counsel." *Russel*, 471 Mich at 194 n 29; see also *Cronic*, 466 US at 659.

Apart from his *Cronic* argument (which requires no showing of prejudice, *Cronic*, 466 US at 659), defendant also asserts that "his substantial rights were adversely affected" by the trial court's provision of the transcripts to the jury as they became available. However, defendant does not explain how he was actually prejudiced by the trial court's actions such that the trial court should have granted defendant's motion for a mistrial. Defendant has therefore abandoned this argument. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

Further, even if we were to consider defendant's argument, we would find no such prejudice on the record before us. We review for an abuse of discretion a trial court's decision to grant or deny a mistrial. *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). A mistrial should be granted only if "an irregularity that is prejudicial to the rights of defendant" occurs and "impairs his ability to get a fair trial." *Id*. (citations omitted). We note that a trial court has broad discretion when responding to a jury's request to review testimony during deliberations. See MCR 2.513(P). The trial court explained that McConnel's testimony was prepared first because he had testified before defendant. That decision was not an abuse of discretion because it was within "the range of principled outcomes." *Musser*, 494 Mich at 348. And the record evidence against defendant strongly supports the jury's verdict; nothing in the record leads us to believe that the simultaneous provision of McConnel's and defendant's word-for-word testimony in written form would have altered the outcome of the proceedings.

---

[4] We note that the trial court was not permitted to ignore a reasonable request to review testimony. MCR 2.513(P).

Defendant's request for a mistrial was therefore not premised on a prejudicial irregularity, and the trial court did not abuse its discretion in denying it. *Haywood*, 209 Mich App at 228.

Affirmed.[5]

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Michael F. Gadola

---

[5] Defendant requests that we remand to the trial court for a correction to the judgment of sentence. We note that an amended judgment of sentence has already been entered correcting the error identified by defendant.